Good morning, Your Honors. David Miller for the defendant in this case. Your Honor, this was originally, I thought, an Anders brief, and I didn't think I would be doing oral argument in front of you tonight. Can you speak up a bit? I'm sorry. I apologize. This was originally an Anders brief, and I didn't actually plan on ever doing oral argument on this case. But in reviewing the briefs that were put forth, I'm thinking the Court is taking a look more at the 404B issues in this matter and would maybe like some expansion on that. I think that's the reason we're hearing for oral argument this morning. I spoke with the United States, and we do stipulate that jurisdiction is proper this morning. So your objection on the 404B was really on the prosecutorial misconduct, not on the actual 404B, right? Well, I believe also, Judge, that if you take a look, it's on page 11 of the United States brief where, during questioning, I asked him who else he sold meth to in the Spokane area, and he says he doesn't sell to anyone else. And that was what the Judge Rice hung on and allowed some evidence to come in based upon the alleged I sell my methamphetamine for certain amounts of money. The Judge basically says, well, that's him admitting that on that day that he made a transaction. And then if you take a look at what the two officers stated in prior hearings, they admitted that they didn't ask any questions about the incident that took place on July 18th. Yet, and then the Court rules that the government may not introduce evidence of the defendant's alleged drug distribution prior to July 18th, 2013. But then the question was asked at trial, and it was allowed in as far as how much he allegedly sold methamphetamine. The morning of trial, though, the morning that the trial started, they went over these questions, and Judge Rice said they're okay. They did. And I didn't say that – I believe that that was probably an improper ruling. I think that if you take a look, perhaps maybe the Judge didn't remember what he had stated in the initial motion. But the other side of it, you know, the evidentiary motions change all the time during a trial. What you say at one moment, circumstances can change or you can reconsider it up until the time that it's not – just because you say at one point I'm not going to let something in as a judge doesn't mean that you can't change your mind, right, until it happens. True. It's rolling. It's rolling. The defense was warned not to open the door, and the defense didn't open the door. This took place during the state – during the government's case in chief. That was during – on the initial direct questions. This didn't take place after the defense had opened. But the judge said certain things could come in that morning. He did. And so then the question is, did the government violate the district court's order, what the judge said? I don't know if the government violated it as much as the government's witness violated it. He talked about the fact that what you could – what the – again, what do you say? He pretty much said exactly what – the judge was pretty specific about what the witness could say, and he pretty much just said that. I can't really argue with the court on that. You read the same transcript I read, so that's correct. You know, the prior order that Judge Rice entered on these pretrial – there were a series of pretrial matters, the motions in limine, and he filed an order. He talked about specific incidents of prior drug dealing. He did. That's what he seemed to be focused in on. Well, yes and no. But then, again, if the question – again, I asked him if he sold meth to anyone else in the Spokane area, and he said, no, I don't. Now, you can take that question two ways. If I were to ask you, did you have a car wreck this morning, and you say no, and if I say – it's more of a question along the lines of when did you stop beating your wife. You really can't get out from underneath the question. The way the officer phrased it and the way it was phrased on the record, Mr. Fuentes could not have gotten out from underneath that question. Who else do you sell methamphetamine to in the Spokane area? I don't sell to anyone else. You can take that two ways. I don't sell to anyone ever, or I don't sell to anyone else except this person. But the way the question was phrased, you can't get out from underneath it, and that is what was relied upon in order to allow this evidence in. And so based upon that, Judge, I believe that it was improper, and that prejudiced the jury against Mr. Fuentes. I really don't think I have a lot of other issues I can even bring up. I went through the record with a fine-tooth comb over the past several days, and I just didn't see any other reason why the Court might want to have me hear the data. There was an argument about prosecutorial misconduct. There is an argument about that, and, you know, we maintain the – I stand on the brief that I filed, Judge. We didn't file a supplemental brief or a responsive brief to the governments because we believed that we had covered all the issues properly, and we didn't believe that we could really state anything else extra that we had. Wait a minute, though. That's also tied in with this 404B issue, isn't it? It is. The prosecutorial misconduct, the 404B, and the fact that – I think, to tell you the truth, that the defense attorney's objections should be carried forward even through the point of the trial. I mean, he objected to that coming in. I don't believe that objecting – Well, he raised it before trial. Judge Rice seemed to let it – you know, the morning of trial. He did. He had this discussion with – colloquy with Judge Rice. But prior to that – Judge Rice said, well, this all relates to what happened that day. And that's – right. But he based that upon that one question where he says, basically, when did you stop hitting your wife question? You can't get out from underneath it, and that's what Judge Rice hung that on, completely hung it on. Well, it's – yeah, but it seems that the whole argument when you – well, when you analyze prejudice, of course it was bad for your client. All right. But that's not the – that's not the – that's not the analytical paradigm for prejudice versus probative. I agree. Because it was, like, probative off the map, and then, of course, it was bad that way. But that – but the – if the relevance outweighs that, then that's – and it was limited to that particular time. But the – And, you know, I don't even – you know, it wasn't – it wasn't a particularly weak case because it was a controlled buy, and you got the dope coming out. You didn't get the money later. That's true. Well, I can argue a little bit about that, Judge. It wasn't the best controlled buy I've ever seen. They didn't ever see my client having any illegal drugs. The person he allegedly – Well, the kids in the car probably didn't sell it. Judge, the person that sold the drugs to the CI said he got the drugs from the laundry room, and that he went to the van to buy an iPod or an iPad. Now, if you're a drug dealer, Judge, and you don't want people to know that you've – I'm not, really. Right. I guess I don't want an adoptive admission. We have that in a later case here. I'm not. Okay. If you don't want the person that you're selling the drugs to to know where you've hidden the drugs, your big supply of drugs, you're going to say, I don't have any here. I've got to have someone bring them. And then you might just text somebody and say, I want to buy your iPad. He just swings in not even knowing that he's there as a ruse for the person selling the drugs. And then he goes and buys the iPad. Then he goes down to the laundry room, like he said, picks up the drug quantity that he was supposed to have and brings it back and sells it. I mean, if you're – But did the jury think that you might? Probably not. But that really was an argument. But, I mean, if you're a drug dealer and if you've got something that you know is illegal and you've got something you know that – I guess I'm going to be out of time. But if you've got something you know that someone may even kill you over, that would be a reason to maybe hide where you have it hidden. I've got it hidden in the laundry room, but I'm not going to tell him that. I'm not going to leave here and go just suddenly back and appear with some drugs. I'm going to make a ruse. Okay. I think we have your argument. Why don't you save your time here if you want. Thank you. May it please the Court, George Jacobs on behalf of the United States Attorney's Office for the Eastern District of Washington. Your Honors, the government did not commit prosecutorial misconduct in this case because the government did not introduce inadmissible propensity evidence. Moreover, the morning of trial, as Judge Paez pointed out, Judge Rice – we engaged in a colloquy with Judge Rice, and we went over the specific statements that were in Deputy Housie's report because I wanted clarification as to exactly what I could introduce during the course of that trial. And Judge Rice concluded that those statements were admissible under the Federal Rules of Evidence 801D2A, statement by a party opponent, a party admission. So the United States did not commit prosecutorial misconduct in eliciting that testimony from Deputy Housie. Moreover, during the direct examination of Deputy Housie, Your Honors, the government directed Deputy Housie specifically to the July 18, 2013, transaction in framing its questions. So Judge Rice, what he said was it's not – it doesn't qualify as 404B evidence, the statements about the price, what he buys it for, what he's – the cost of – the price for buying, selling, and the quantity that he usually distributes. He had those three. That is correct, Your Honor. Okay. Judge Rice said that's not 404B evidence, right? That is correct. Why not? I mean, why isn't it 404B evidence? Your Honor, it's not 404B evidence because that's the transaction that was charged in the indictment. So that's part of the crime that was alleged in the indictment. It related to the distribution of that pound quantity of methamphetamine on July 18. But it certainly suggests that he – the way it was framed, as counsel said, it certainly suggests that he distributed it on other times for similar prices and quantities. Your Honor, the admissions that the defendant made to Deputy Housie also, as Judge Rice pointed out, went to his current method of operation. And he spoke to paying $7,000 a pound for it, charging $9,000 a pound for it. And the evidence that was introduced during the trial, if the courts, if the judges recall, Your Honors, a photograph was introduced with a Tupperware container of what appeared to be approximately a pound of methamphetamine. So the statements, and as Judge Rice pointed out, while those statements may be vague and open to interpretation, but opposing counsel in closing argument could have argued a different meaning to those statements, or as Judge Rice – But they're the defendant's statements, right? They are, yes, Your Honor. They are the defendant's – So it's not like you're even really putting in other incidents. It's just like it's him talking about drugs and how he sells drugs. That is correct, Your Honor, on July 18th of 2013. And if the court recalls, there was evidence that was introduced that Mr. Fuentes made a stop, well, at the Spokane discount, then the IHOP, and then on his way to Sunnyvale, Washington, he made a stop at a business as well. And if memory serves me correctly, there was a financial transaction at that place. So, Your Honor, I'd also – Your Honors, I'd also point out that after the guilty verdict was rendered, Mr. Fuentes' trial counsel filed a Rule 29 and Rule 33a motion, and where Mr. Fuentes' counsel – one of the grounds for the Rule 33a motion were three of the specific statements that were introduced at the trial of the defendant's statements. And Judge Rice, in ruling on the Rule 29 and Rule 33 motion, denied the motion. And as this court knows, the court's power under Rule 33a is much broader than it is under Rule 29. And so the court carefully considered those statements and determined there was no miscarriage of justice and the conviction should not be vacated. Are there any other questions? No, I think so. Thank you, Your Honors. Thank you. Briefly, Your Honors. That's all I have. I guess I can't do any more than briefly. Remember, Your Honors, in this case specifically, we have police officers who are telling one story at pretrial hearings and telling another story at trial. Normally, were you lying then or are you lying now is a great question to ask. And that's defense lawyers. We love it when we get a police officer making one statement at one time and another statement at another. How did they differ? Pardon? How did the statements differ by the police officer? The officer said that he did not ask Mr. Fuentes about the incident on the 18th. He stated that categorically and never didn't, never changed that statement again. But then managed to get in, I sell methamphetamine for a certain amount, and that's based upon entirely upon the when did you stop beating your wife type question that was allowed in by Judge Rice. Now, for the United States to stand up and say that this is an example of his current methods of operation, there was no current method of operation. The 18th was what was indicted. The 18th was what was talked about at trial. Nothing from the 18th. I think he was arrested on the 26th, so he was arrested seven or eight days later. It's not like he had an ongoing operation after the 18th that the United States knew about. So to stand up and say that that is his current method is a bit disingenuous. It's not. It had to do with the history, and that wasn't allowed in under Judge Rice's ruling. And thank you. Okay. All right. Thank you, counsel. We appreciate your arguments. The matter is submitted.
judges: Fisher, Paez, Callahan